[No. 6,480.—Department No. 1.]

## BOEDEFELD *v.* REED ET AL.

INSOLVENT ACT—BANKRUPT ACT — CONSTRUCTION OF CONTRACT.—The operation of the Insolvent Law was suspended by the Bankrupt Act, in the sense that no proceeding could be commenced for a discharge under it, while a general bankrupt law existed; but, upon the repeal of the Bankrupt Act, the Insolvent Law revived, and came again into operation, as if it had never been suspended; and its provisions apply as well to indebtedness contracted while it was suspended, as to indebtedness contracted after it again came into operation.

APPEAL from a judgment for the plaintiff, in the Tenth District Court, County of Colusa.    KEYSER, J.

*A. L. Hart*, for Appellant.

The·effect of the passage of a Bankrupt Law by Congress cannot be construed to repeal or suspend the vital force of a State enactment.    The only effect is to suspend the power of the State to enforce its Insolvent Law ; and to create in the Federal Courts an exclusive jurisdiction.    It follows that a debt, contracted while the national Bankrupt Act was in force, may be discharged under the Insolvent Act, upon its revival.    (3 Pars. on Cont. 446 ; *Ward* v. *Proctor*, 7 Met. 321 ; *Austin* v. *Calverly*, 10 id. 332.)

*John T. Harrington*, for Respondent.

During the existence of the Bankrupt Act, the State Insolvent Law was wholly suspended. (*Martin* v. *Berry*, 37 Cal. 210.) Citizens of the same State, entering into contracts, are to be understood as making them with reference to existing laws (*Mather* v. *Bush*, 16 John. 232; *Blanchard* v. *Russell*, 13 Mass. 16; *Edwards* v. *Kearzey*, 96 U. S. 595); and it is only upon this principle that the constitutionality of the law is maintained. It would, therefore, be a forced construction which would give to a law that is suspended, but afterward revived, an equal import with a law subsisting and in force at the time of the contract

MCKINSTRY, J.:

The indebtedness set forth in the complaint was all contracted before the first day of September, 1878—the date of the repeal of the Bankrupt Law of the United States.

The answer avers that the defendants have been discharged from all their indebtedness, under the provisions of the State Insolvent Law, and contains a history of the proceedings by which that discharge was procured, from the application to the final discharge.

The case was submitted to the District Court, on the pleadings, upon motion of plaintiff, and the Court rendered its judgment in favor of plaintiff, holding that indebtedness incurred before the first day of September, 1878, could not be discharged under the State law.

The point made by counsel for the respondent is, that the State law, in relation to insolvent debtors, was suspended by the national Bankrupt Act, and that to construe the State law in such a manner as to authorize the discharge under it of indebtedness incurred during its suspension, would be impairing the obligation of contracts, within the meaning of the inhibition upon that subject, which is contained in the Federal Constitution.

The United States and the several States have a concurrent power to enact a bankrupt law or an insolvent law. " Congress shall have power *. * to establish * * uniform laws on the

subject of bankruptcies, throughout the United States." (Const. U. S. art. i, § 8.) There can be no doubt that, so far as State insolvent laws prevent, or even impede, the operation of a United States bankrupt law, they must yield, in order that it may fully accomplish its object of establishing a uniform system throughout the United States. (*Ex parte Giegenfass*, 2 Ired.) It may be admitted, also, that a United States bankrupt law "suspends the operation" of a State insolvent law. This view is probably sufficiently sustained by the consideration that any proceedings taken under the State law, might, and almost necessarily must, interfere with the enforcement of the more general statute of the United States. The meaning of the expression of Chief Justice Marshall, (in *Sturgis* v. *Crowninshield*, 4 Wheat. 122,) "the *right* of the States *to pass* a bankrupt law is suspended by the enactment by Congress of a general bankrupt law," is plain enough. The meaning of the phrase, " a bankrupt act *suspends the operation* of a State insolvent law," is explained by the cases in which a like phrase is employed. The passage of a law of the United States, providing for a uniform system for the relief of. bankrupts, does not *repeal*, the repeal of the law providing the uniform system does not *re-enact*, the State insolvent law. Such was not the meaning of the Supreme Court of Massachusetts, in *Judd* v. *Ives*, 4 Met. 401, where it was said: "The Act of Congress  *  *  *  does suspend the operation of the law of this Commonwealth.  *  * But we are, nevertheless, of the opinion that this consequence is limited to cases instituted under the insolvent laws, subsequent to the period when the Bankrupt Law went into operation; and that it cannot supersede or suspend proceedings rightfully commenced under the Insolvent Act, prior to the time of its going into operation." In the subsequent case, *Austin* v. *Caverly*, 10 Met. 332, the same Court held that a debt founded on a contract, made *while the Insolvent Act was suspended* by the Bankrupt Law, could be discharged under the provisions of that act, after it came into *renewed operation*. (See also, *Atkins* v. *Spear*, 8 Met. 491.)

A law may subsist, although any or all persons be prohibited for a time from taking advantage of its benefits. The operation of the Insolvent Law was suspended, in the sense that no pro-

ceeding could be commenced for a discharge under it while a general bankrupt law existed. The moment the law could be resorted to by any one, it could be resorted to by all, to whom, by its letter, its benefits were extended. The statute "for the relief of insolvent debtors" (Statutes 1852, p. 69) declares: "*Every* insolvent may be discharged from his debts." Defendant comes plainly within this provision. If the Insolvent Law "revived," or came again "into operation," (whatever the form of expression) by the repeal of the Bankrupt Law of the United States, we must construe it as if it had never been suspended, so far as proceedings initiated after the suspension ceased are concerned. No person could commence proceedings for a discharge while the Insolvent Law was suspended—this, and nothing more.

Judgment reversed, and cause remanded.

Ross, J., and McKee, J., concurred.